■ OCEAN STATE SEAFOOD, INC., et al., Respondents, v CAPITAL NEWSPAPER, DIVISION OF THE HEARST CORPORATION et al., Appellants.—Levine, J. Appeal from an order of the Supreme Court at Special Term (Cholakis, J.), entered August 17, 1984 in Albany County, which denied defendants' motion for summary judgment dismissing the complaint.

Plaintiffs own and operate a wholesale and retail seafood market in the Town of Bethlehem, Albany County. On July 10, 1982, defendant Capital Newspaper, Division of the Hearst Corporation published an article by defendant Michael Mus-

kal in one of its newspapers reporting that three cases of infectious hepatitis and a dozen cases of gastroenteritis had been contracted by guests attending a Memorial Day weekend party as a result of eating contaminated clams bought at plaintiffs' establishment. The lead sentence of the article announced, "This is a story about greed and sickness on the half shell." The tracing of the clams from the party to plaintiffs' store by State and local officials was described, as well as an official statement that the number of affected guests at one event was suggestive of general contamination. Without further attribution, the article reported that the clams at the party came from "10 contaminated bushels" plaintiffs purchased in Rhode Island; that two bushels were seized by State officials at plaintiffs' store bearing no tags identifying their source and another bushel had been sold to a local restaurant, which "still leaves six bushels of clams unaccounted for". Earlier in the article, it was reported that four bushels were "still at large * * * enough to contaminate a medium-sized crowd". By way of background, the news account related that the outbreak took place at a time when clam prices had soared as a result of the temporary closing of major clam beds in Rhode Island due to pollution. The article recounted an interview with another area supplier who told the reporter that, due to the scarcity of supply and high prices, there are "illegal clams" available, but that "most people don't want to take chances because of the fines". The story concluded with a report that after the seizure at plaintiffs' store, plaintiffs were fined $25 as a "civil compromise" in a Bethlehem Town Justice Court.

As a result of the foregoing publication, plaintiffs brought suit, alleging three causes of action in libel: (1) that the story falsely accused plaintiffs of greed and impropriety in selling contaminated clams; (2) that the article falsely accused plaintiffs of distributing several bushels of contaminated clams which were unaccounted for; and (3) that defendants falsely reported that plaintiffs were fined for culpable conduct related to selling contaminated clams, whereas in fact the fine was merely for a labeling violation in connection with missing identification tags. Once issue was joined, defendants moved for summary judgment, and now appeal from Special Term's denial of their motion.

The main thrust of defendants' attack on the sufficiency of plaintiffs' claims is that, as a matter of law, the July 10, 1982 article is not susceptible of a defamatory meaning as to plaintiffs and that, in any event, to whatever degree any

excerpt thereof might have been derogatory, it constituted nothing more than an expression of opinion protected under the 1st Amendment. We disagree.

Reading the article as a whole, as we must, and considering the accusatory words in their context (*Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 382, *cert denied* 434 US 969; *Bruno v New York News,* 89 AD2d 260, 263), we cannot say that an average reader could not reasonably interpret the article as charging plaintiffs with knowingly and avariciously buying large quantities of contaminated clams from illegal sources and selling them to the general public for artificially inflated profits. In arriving at this conclusion, we reject defendants' argument that the article's reference to greed can only be construed as a characterization of general conditions in the shellfish industry as a whole, or of unknown participants therein, rather than as a direct accusation against plaintiffs. The article's self-labeling of itself as a *story* of greed is immediately preceded by a subheadline concerning the hepatitis contracted from plaintiffs' clams at the party, and is immediately followed by a purportedly factual paragraph detailing the tracing of the clams causing the illnesses back to plaintiffs' store. Later, the article flatly accuses plaintiffs of having purchased "10 contaminated bushels" and, by asserting that several bushels were "at large" or "unaccounted for", clearly implies that there were substantial additional sales of contaminated clams by plaintiffs. Indeed, the primary, if not sole newsworthy events described in the article's "story" are directly referable to plaintiffs' activities.

It is true that the article also speaks of general conditions and practices in the shellfish trade, in which "illegal" clams are bought and sold for extraordinary profits despite the deterrent of "fines". However, this could also be construed as pointing to plaintiffs because of the article's later account of plaintiffs' fine, without also disclosing that this was solely for a violation of labeling regulations. If, as we have concluded, a jury could reasonably find that the average reader could identify plaintiffs as the subject of the "story of greed" in knowingly dealing in adulterated clams, there is little doubt that a jury could also find that the article in effect charged plaintiffs with unethical, if not illegal, business conduct, an actionable defamation under the case law (*Rinaldi v Holt, Rinehart & Winston, supra,* p 382; *Bruno v New York News, supra,* p 268).

We are similarly unpersuaded that defendants, as a matter of law, are shielded from liability on the ground that the

imputation of greed to plaintiffs is a constitutionally protected expression of opinion. An expression of opinion is exempt from the libel laws if it sets forth the objective facts upon which the opinion is based (*Rinaldi v Holt, Rinehart & Winston, supra,* p 381), and then only if the facts are true (*Edwards v National Audubon Socy.,* 556 F2d 113, 121, *cert denied sub nom. Edwards v New York Times Co.,* 434 US 1002; *Greenberg v CBS, Inc.,* 69 AD2d 693, 702). Contrary to defendants' contention, the charges of greed and dealing in contraband clams here is not based solely on the objective facts of the tracing of a single batch of clams to plaintiffs' store, nor the general practices within the shellfish trade. As previously noted, they are also supported by factual assertions that all 10 bushels of plaintiffs' Rhode Island clam purchase were contaminated, that a substantial portion thereof had been sold and were still unaccounted for, and the implication that plaintiffs had been criminally charged because of dealing in illegal clams. These assertions are not merely minor discrepancies having no material effect on the conclusions a reader might reach from the article as a whole (*cf. Bruno v New York News, supra,* p 266). Since the veracity of the latter factual assertions is in sharp dispute, and since they are a significant support for the article's imputation of greed to plaintiffs, the issue of whether that charge is a constitutionally protected expression of opinion cannot be disposed of without a trial.

The remaining grounds for reversal raised by defendants may be considered without extended discussion. Concededly, the report of a local outbreak of infectious hepatitis from contaminated clams was one of legitimate public interest. Therefore, defendants were entitled to qualified immunity which can be overcome only by proof that defendants acted in a grossly irresponsible manner without due consideration for the ordinary standards of sound journalism (*see, Karaduman v Newsday, Inc.,* 51 NY2d 531, 545; *Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199). However, plaintiffs have averred that they were readily available for inquiry by defendant Muskal and that such an inquiry would have disclosed that no significant part of the total purchase by plaintiffs was contaminated; that the purchase was from a lawful source, for a sum reflective of then current market prices for legitimate, inspected clams; and that plaintiffs were neither charged with nor convicted of trading in illegal or contaminated clams. This showing raises a question of fact as to whether, in its reporting, defendants complied with the applicable journalistic standard of care (*see, Greenberg v CBS, Inc., supra,* pp 707-708). We

are similarly of the view that a jury question is also presented with respect to defendants' defense that the article's account of the imposition of a fine against plaintiffs in Justice Court was statutorily privileged as a "fair and true report of any judicial proceeding" (Civil Rights Law § 74). The "neutral reportage" privilege does not apply when the news account of the judicial proceeding is combined with other facts or opinions to imply wrongdoing (*Russo v Padovano*, 84 AD2d 925, 926). Since, as previously discussed, the account of plaintiffs' fine omitted disclosure that it related only to a violation of labeling requirements and can be read with other portions of the article to suggest more serious misconduct, resolution of this defense must also await a plenary trial.

Finally, the article clearly can be read to charge plaintiffs with a course of conduct involving several wrongful acts in buying and selling contaminated and contraband clams. Therefore, the "single instance" rule, requiring a plaintiff accused of only a single act of impropriety to plead and prove special damages, also does not apply (*cf. Duci v Daily Gazette Co.*, 102 AD2d 940). For all of the foregoing reasons, the order denying summary judgment should be affirmed.

Order affirmed, with costs. Casey, J. P., Weiss, Mikoll, Levine and Harvey, JJ., concur.