[610 NYS2d 503]

MICHAEL F. ARMSTRONG, Respondent, v SIMON & SCHUSTER, INC., et al., Appellants.

First Department, April 19, 1994

### APPEARANCES OF COUNSEL

*Roy L. Reardon* and *Robert F. Cusumano* of counsel *(Edward Johnson* with them on the brief; *Simpson Thacher & Bartlett,* attorneys), for appellants.

*Roderick C. Lankler* of counsel *(Sharon L. McCarthy* with him on the brief; *Lankler Siffert & Wohl,* attorneys), for respondent.

### OPINION OF THE COURT

KUPFERMAN, J.

This libel action is brought by the well-known criminal defense attorney Michael F. Armstrong based upon a paragraph which appeared in the book Den of Thieves, published by defendant Simon & Schuster and written by defendant Stewart with the research assistance of defendant Cohen. Den of Thieves, a best seller, chronicles the demise and criminal prosecution of the investment banking firm of Drexel Burnham Lambert, Inc., and Michael Milken. Plaintiff was retained by Lowell Milken, Michael's brother, during the Government's investigation of Drexel, and was also retained by Craig M. Cogut, who himself is an attorney, and who enjoyed a relationship with Drexel.

The complained-of passage in the hardcover edition of Den of Thieves relates:

"Cogut had joined Milken's in-house law firm in 1984, and it was rechristened Victor, Cogut & Sandler. He had never been under any illusions that this was a law firm in the true sense; Milken and his family were the sole clients, and the firm's offices were on the third floor of the Drexel office building owned by the Milken brothers. Cogut had hoped that he'd end

up working on Drexel venture capital and tax deals, but he'd ended up doing much of his work for Lowell Milken, who oversaw all the partnership activity.

"After news of the Boesky agreement, Cogut had agreed to be represented by New York criminal lawyer Michael Armstrong, Lowell's lawyer. But like Maultasch and Dahl, Cogut had become uneasy about his attorney's possible conflict of interest. Lowell's interests were too close to Mike Milken's. Cogut's concern had increased when, earlier in 1988, Armstrong came to him with an affidavit he had prepared for Cogut to sign. Its intent had been to exonerate Lowell, based on assertions of fact by Cogut. Cogut read it over and had only one problem: the *facts weren't true.* He angrily refused to sign, and began looking for new lawyers, eventually hiring Los Angeles lawyers Tom Pollack and Ted Miller." (At 396-397; emphasis added.)

According to the verified amended complaint, on September 13, 1991, prior to publication of the hardcover edition of the book, Mr. Armstrong wrote to the Chairman of Simon & Schuster, notifying him that the book contained false statements and suggesting a meeting so that he could demonstrate the inaccuracies in the book. A meeting was thereafter held on September 26, 1991 with counsel for Simon & Schuster at which Mr. Armstrong specifically called attention to the foregoing passage, explained how damaging it was for a practicing attorney to be falsely accused of suborning perjury, and suggested the insertion of an "errata sheet" in the already printed hardcover edition.

Although the first printing of the hardcover edition was thereafter distributed without an errata sheet or other changes, a change unrelated to Mr. Armstrong and correcting the date of a certain stock trade was made in later printings of the hardcover edition as well as in the softcover edition of the book, which also made the following changes in the complained-of paragraph: "After news of the Boesky agreement, Cogut had agreed to be represented by New York criminal lawyer Michael Armstrong, Lowell's lawyer. But like Maultasch and Dahl, Cogut had become uneasy about [his attorney's possible conflict of interest] the differing interests of his attorney's several clients. Lowell's interests were too close to Mike Milken's for Cogut's comfort. Cogut's concern had increased when, earlier in 1988, Armstrong came to him with an affidavit he had prepared for Cogut to sign. Its intent had been to exonerate Lowell, based on assertions of fact by Cogut.

Cogut read it over and had only one problem: the facts weren't true. He angrily refused to sign, and began looking for new lawyers, eventually hiring Los Angeles lawyers Tom Pollack and Ted Miller. <u>In September 1988 Cogut submitted an affidavit."</u> (Bracketed material deleted, new material underscored.)

On the basis of these passages, Armstrong commenced this libel action without pleading special damages, claiming that he was harmed in his profession and accused of criminal conduct in that the passages allegedly charge him with ignoring a conflict of interest when he agreed to represent both Milken and Cogut and that he, in effect, asked Cogut to execute a perjurious affidavit in order to benefit his more famous and influential client, Lowell Milken.

He further alleges in his complaint that the statements in the passages complained of are not true, in that while a draft affidavit was prepared by him for Cogut's signature which would indeed benefit Lowell Milken, when Cogut wished new counsel he, Armstrong, assisted Cogut in obtaining new counsel to help with the revisions of the suggested affidavit and a final draft was in fact completed with the assistance of Cogut's new counsel. Indeed, Armstrong alleges in his complaint that the final draft was submitted to the office of the United States Attorney and that there was never given to Cogut an affidavit for his signature, except the one that was actually signed. Finally, plaintiff alleges that these facts were made known to the defendants prior to the publications.

Defendants moved to dismiss the complaint for failure to state a cause of action, alleging that the complained-of passages were in fact truthful according to the very statements in plaintiff's complaint and are therefore not actionable; that, even if the passages were untrue, they are not defamatory; that, in any event, this libel action is barred by the "single instance" rule; and that, finally, the complained-of passages represent protected expression of opinion rather than statement of fact.

Applying the criteria set forth in *Rinaldi v Holt, Rinehart & Winston* (42 NY2d 369) and *Bardey v Brooke-Hitching* (167 AD2d 141), the IAS Court held, in pertinent part: "Upon review of the passages in issue this court finds they are susceptible of defamatory meaning. At a minimum, the average reader is left with the impression plaintiff deliberately prepared a false affidavit to aid one client and asked another

client to assist with the lies; the latter client recognizing plaintiff his attorney was not acting in his best interest, and unwilling to go along with the lies then obtained new counsel to prepare a new affidavit. The paperback publication compounds this impression by suggesting that the later affidavit contained the truth. These facts, if true, would constitute violations of the attorney ethics rules and of criminal laws of subornation of perjury. The impression of wrongdoing by plaintiff is magnified when one recollects the book is about less than wholesome characters who fell afoul of the criminal laws."

Although recognizing the burden placed upon plaintiff to plead and prove that the words used by defendants on a matter of public concern are substantially false and recognizing the chilling effect on First Amendment freedoms of the " 'threat of being put to the defense of a lawsuit' " *(Karaduman v Newsday, Inc.,* 51 NY2d 531, 545), we nevertheless agree with the IAS Court.

Contrary to defendants' assertions that plaintiff seeks to put his own "spin" on the meaning of the complained-of passages, such "spin", we think, is not dependent upon external facts, but is "one which a reader might not irrationally attach to the [passages] as written" *(November v Time Inc.,* 13 NY2d 175, 179).

We also agree that the "single instance" exception to liability does not apply here *(see,* Kyu Ho Youm, *"Single Instance" Rule as Libel Defense,* 9 Comm & Law 49 [Aug. 1987]).

As stated by the Court of Appeals in *November v Time Inc. (supra,* at 178): "If that were the whole of it there would probably be no defamation since, as we will assume, the rule stills holds that language charging a professional man with ignorance or mistake on a single occasion only and not accusing him of general ignorance or lack of skill cannot be considered defamatory on its face and so is not actionable unless special damages are pleaded *(Foot* v. *Brown,* 8 Johns. 64, 68; *Twiggar* v. *Ossining Print. & Pub. Co.,* 161 App. Div. 718). But there is a great deal more in addition to that quoted paragraph and a reading of the whole of it may well have left a sophisticated and sports-conscious reader of the magazine with the impression that plaintiff had indulged in highly unprofessional conduct."

There are no special damages pleaded here, but we have

implications of suborning perjury and suggestions of conflict of interest and while, after remonstrance, the conflict of interest aspect was softened in the softcover edition, there is no drawing back from the insinuations of prompting of false assertions of fact. Such is intolerable for a professional whose stock in trade has to be integrity.

Unlike the situation in *Freeman v Johnston* (192 AD2d 250, *rearg denied and lv granted* 198 AD2d 924, *affd* — NY2d —), where it was obvious from the context that the attorney could logically have been credited with the statements attributed, here the situation is more like *Gross v New York Times Co.* (82 NY2d 146, 154) in that there are two assertions of "objective fact that, if proven false, could form the predicate for a maintainable libel action." *(Cf., Milkovich v Lorain Journal Co.,* 497 US 1.)

█ Likewise, defendants' contention that any defamatory implication is a constitutionally protected expression of opinion is belied not only by the statements on the hardcover edition's dust jacket and the back of the softcover edition which talk of weaving "all the facts into an unforgettable narrative", but by the context of the passage itself which is in a "straight-forward, matter-of-fact style and contains none of the phrasing typically associated with opinion reporting" *(Cantrill v Herald Co.,* 1992 US Dist LEXIS 7620, at *39-40 [ND NY, May 22, 1992, Munson, J.])*. Considering the challenged statements in the context of the entire publication, their tone and apparent purpose, as well as their effect on the average reader, they cannot be said to constitute constitutionally protected opinion *(see, Steinhilber v Alphonse,* 68 NY2d 283, 290-292; *Rinaldi v Holt, Rinehart & Winston, supra,* 42 NY2d 369, 381).

Accordingly, the order of the Supreme Court, New York County (William J. Davis, J.), entered June 1, 1993, which denied defendants' motion to dismiss the amended complaint for failure to state a cause of action, should be affirmed, without costs.

ROSENBERGER, J. P., WALLACH, ROSS and NARDELLI, JJ., concur.

Order, Supreme Court, New York County, entered June 1, 1993, affirmed, without costs.