■ DANIEL GOLDREYER, LTD., et al., Respondents, v ERNST VAN DE WETERING et al., Defendants, and ELISABETH BRACHT et al., Appellants. [630 NYS2d 18] —Order, Supreme Court, New York County (Edward Greenfield, J.), entered on November 30, 1993, which, *inter alia*, denied appellants' respective motions and cross motions for dismissal of the complaint as against them, unanimously modified, on the law, to the extent that the motions of appellants Schnitzer and Time, Inc. to dismiss the amended complaint are granted, and otherwise affirmed, without costs. The clerk is directed to enter judgment in favor of defendants-appellants Time and Schnitzer dismissing and severing the action as to them.

The IAS Court should have accorded the opinion privilege as a matter of law and dismissed the complaint insofar as based upon defendant Schnitzer's alleged comment, as printed in the December 30, 1991 edition of Time International, that plaintiffs' restoration of Barnett Newman's painting "Who's Afraid of Red, Yellow and Blue III", if rehung, should be accompanied by a warning sign, "Newman according to Goldreyer". Analysis of this statement in accordance with the factors set out in *Steinhilber v Alphonse* (68 NY2d 283, 292) leads to the conclusion that the statement does not have a precise meaning, cannot be objectively characterized as true or false, appears in an immediate context, the "Art" section of defendant Time Maga-

zine, where the average person would understand it as, or expect to find, expression of opinion or personal taste, and appears in a broader context of the public debate over the artistic merit of the restoration. Accordingly, it is entitled to constitutional protection as opinion in the form of " 'imaginative expression' " or " 'rhetorical hyperbole' " (*Milkovich v Lorain Journal Co.*, 497 US 1, 20; *Polish Am. Immigration Relief Comm. v Relax*, 189 AD2d 370, 373; *Gonzalez v Sackman*, 185 AD2d 117, *appeal dismissed* 80 NY2d 971).

Similarly, defendant Time's speculation as to whether a "masterpiece" was "murdered", its assertion that "for the burghers of Amsterdam the glow is gone from Newman's once warmly wonderful masterpiece", and its allegation that "[t]he painting no longer exists [, and] has become a curiosity with a sad history" should also have been accorded the opinion privilege.

On the other hand, the opinion privilege was correctly withheld as to Time's other two statements referring to the report issued after investigation and hearings by the Dutch Ministry of Justice: "After microscopic tests on 30 samples of Newman's work, the lab concluded that Goldreyer had not matched the original oils." and "Instead, the lab reported, the restorer had used alkyd, a synthetic paint commonly used on window frames."

This was not pure opinion, but opinion based upon fact, and therefore is actionable insofar as it contains implications of additional undisclosed facts (*see, Larchmont Professional Fire Fighters Assn. v Larchmont/ Mamaroneck Volunteer Ambulance Corps*, 206 AD2d 507, 508). These statements contain such implications, since the Ministry of Justice report is not disclosed in detail and the statements raise the inference that it included a finding that plaintiffs used house paint for the restoration (*see, Brown v Albany Citizens Council on Alcoholism*, 199 AD2d 904, 905; *Gross v New York Times Co.*, 82 NY2d 146, 155).

However, these two statements should have been accorded the absolute privilege as to fair and true reportage of an official proceeding embodied at Civil Rights Law § 74. This provision requires only that a statement be "substantially accurate" for the privilege to attach (*Holy Spirit Assn. v New York Times Co.*, 49 NY2d 63, 67; *Glendora v Gannett Suburban Newspapers*, 201 AD2d 620, *lv denied* 83 NY2d 757; *Freeze Right Refrig. & Air Conditioning Servs. v City of New York*, 101 AD2d 175, 182-183; *Sprecher v Dow Jones & Co.*, 88 AD2d 550, 552, *affd* 58 NY2d 862), and "substantially accurate" is interpreted liber-

ally (*see, Becher v Troy Publ. Co.*, 183 AD2d 230, 233-234). The test is whether the published account of the proceeding would have a different effect on the reader's mind than the actual truth, if published (*Dibble v WROC TV Channel 8*, 142 AD2d 966, 967). If the published account, along with the rest of the article, suggests more serious conduct than that actually suggested in the official proceeding, then the privilege does not attach, as a matter of law (*Ocean State Seafood v Capital Newspaper*, 112 AD2d 662, 666).

Time's statements accurately described the findings stated in the report, and in context did not suggest more serious conduct than that actually found as a result of the proceedings.

The third defamation defendant, Dow Jones & Company, failed to establish that dismissal was warranted as to it by either the opinion privilege, the Civil Rights Law § 74 privilege, the "single instance" rule, or under *Chapadeau v Utica Observer-Dispatch* (38 NY2d 196), with regard to the five cited portions of the December 24, 1991 article appearing in The Wall Street Journal ("the Journal").

As with Time's statements referring to the Ministry of Justice report, the opinion privilege does not apply to the statements complained of in the Journal article, which were not pure opinion, but opinion based upon fact, and therefore actionable since there were implications of additional undisclosed facts (*see, Larchmont Professional Fire Fighters Assn. v Larchmont/Mamaroneck Volunteer Ambulance Corps, supra*). The article does not quote the Ministry of Justice report in detail and the portions of the article cited by plaintiffs, when read in context, suggest that there has been an investigation and that the reporters are in possession of undisclosed details from the report that support the assertions they make against plaintiffs (*see, Gross v New York Times Co., supra; Larchmont Professional Fire Fighters Assn. v Larchmont/Mamaroneck Volunteer Ambulance Corps, supra; Brown v Albany Citizens Council on Alcoholism, supra*).

The Wall Street Journal article does not qualify for the Civil Rights Law § 74 privilege. As already stated, the test is whether the published account of the official proceeding would have a different effect on the mind of the reader than the actual truth, if published. While the report is couched in highly technical language and dispassionately notes differences in chemical composition between the original paints used and those used by plaintiffs in the restoration, the Journal article describes the paint as inappropriate and speaks of the use of "house paint" and "roller brushes". The published account

suggests more serious conduct than that suggested in the official proceeding; thus the privilege may not be asserted as a matter of law (*Ocean State Seafood v Capital Newspaper, supra*).

Contrary to Dow Jones' assertion, plaintiffs' failure to plead special damages here is not fatal to their claim. The "single instance" rule, wherein language charging a professional with ignorance or mistake on a single occasion only, not generally, is not actionable defamation unless special damages are pleaded (*November v Time Inc.*, 13 NY2d 175, 178; *Bowes v Magna Concepts*, 166 AD2d 347), may not be invoked here by Dow Jones, because it does not apply to an accusation of conduct showing such lack of character that the plaintiff would be unfit for his profession (*see, Rutman v Giedel*, 67 AD2d 662; *Mason v Sullivan*, 26 AD2d 115, 117). The Journal article stated that plaintiff performed a "restoration" on a million dollar abstract masterpiece using a roller brush and house paint and implied that the results warranted possible criminal charges after an official investigation. In the context of plaintiffs' profession, this must be seen as an intolerable commission of " 'highly unprofessional conduct' " (*Armstrong v Simon & Schuster*, 197 AD2d 87, 91, *affd* 85 NY2d 373). This is libel *per se* requiring no special damages (*see, Puranmalka v Puranmalka*, 149 AD2d 493, 494-495), and precluding the "single instance" defense (*see, Rutman v Giedel, supra; Mason v Sullivan, supra*).

Dow Jones' assertion that it should have been granted dismissal due to the absence of any "gross irresponsibility" as journalists on its part, i.e., in this case the fact that the Ministry of Justice report exists (*see, Chapadeau v Utica Observer-Dispatch, supra*), should not be determined at this point. The issue should await discovery, especially given the Journal's failure to accurately summarize the Ministry of Justice report. Evidence needs to be developed as to whether proper journalistic practices were followed and whether there was editorial review (*see, Hawks v Record Print. & Publ. Co.*, 109 AD2d 972).

As for the claims of the non-defamation defendants on this appeal, we concur with the IAS Court that none of their contentions merit dismissal of the complaint.

Ms. Bracht's chief argument for dismissal of the complaint pursuant to CPLR 3211 (a) (7) is that the pleadings are fatally deficient on the issue of how and by what means she induced Dr. Beeren to breach the Mutual Receipt Agreement.

A claim of tortious interference with contract must allege

the existence of a valid contract, the defendant's intentional and unjustifiable interference with performance and damages suffered by the plaintiff, a party to the contract (*Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 194, citing *Hornstein v Podwitz*, 254 NY 443).

On a motion to dismiss pursuant to CPLR 3211 (a) (7), the court is obliged, *inter alia*, to accept each of the plaintiff's factual allegations as true, to make all reasonable inferences therefrom and not evaluate the ultimate merits of the case, to construe the complaint liberally in favor of the plaintiff, and to deny dismissal if a cause of action is at all discernable from the factual allegations of the complaint (*McGill v Parker*, 179 AD2d 98, 105).

When these principles are applied here, we find that plaintiffs' pleadings sufficiently set forth the elements of tortious interference with contract, including that of intentional and unjustifiable interference, which relates to how and by what means Dr. Beeren was induced to breach the Mutual Receipt Agreement. The complaint alleges the motives and deliberate acts of defendant Bracht (along with defendant Van de Wetering) in creating a national scandal in the Netherlands and an international furor in the art community against the restoration and plaintiffs, with the intent, *inter alia*, of inducing Dr. Beeren to breach the agreement by placing him in an untenable position insofar as defending the restoration. Discovery is necessary to determine the extent to which these claims may be developed further, but as the IAS Court noted, enough has been shown at the outset to demonstrate that discovery "would not be an empty fishing expedition".

Ms. Bracht's claim of privilege in connection with employment (*see, Boyle v Stiefel Labs.*, 204 AD2d 872, *lv denied* 84 NY2d 803) is a defense only where the plaintiff has alleged that a defendant has interfered in a contractual relationship between the plaintiff and the defendant's employer. The allegation here is that the contractual relationship is between plaintiffs and Dr. Beeren individually. The museum director as an individual is not Ms. Bracht's employer.

Ms. Bracht's contention that the alleged contract between plaintiffs and Dr. Beeren was void for lack of consideration should not be decided on this motion to dismiss. The issue of adequate consideration for a contract is generally a question of fact (*see, Matter of American Inv. Bank v Marine Midland Bank*, 191 AD2d 690, 692; *Morrison v Piper*, 171 AD2d 958, 961). Plaintiffs have alleged sufficient consideration, i.e., that they granted Dr. Beeren prestige and a high public profile as

the sole spokesman for the restoration. The value of the consideration is not crucial as long as it is acceptable to the parties (*Weiner v McGraw-Hill, Inc.*, 57 NY2d 458, 464), and the general rule is that the slightest consideration may sufficiently support the most onerous contractual obligation (*Mencher v Weiss*, 306 NY 1, 8).

The IAS Court correctly held that the question of whether personal jurisdiction was properly asserted over Ms. Bracht should be held in abeyance pending discovery on the factual issues, since the facts pleaded, that she attended art symposia in New York and disparaged the restoration there, that she made telephone calls to publishers in New York and disparaged the restoration to them, and that regardless of where she committed the alleged tort, she visited plaintiffs' studio in New York several times to inspect the restoration and allegedly made other trips to New York connected with her work for the Museum (*see*, CPLR 302 [a] [3] [i]), show that a sufficient basis for long-arm jurisdiction may exist (*Peterson v Spartan Indus.*, 33 NY2d 463, 467; *Cerchia v V.A. Mesa, Inc.*, 191 AD2d 377, 378). Ms. Bracht's mere denials of these factual allegations are insufficient to defeat them (*see*, *Murray v Plessey Inc.*, 40 AD2d 811), and, in any event, she can contest them anew after discovery.

The IAS Court correctly denied defendant Dr. Beeren's motion to dismiss the complaint as to him. While Dr. Beeren correctly asserts that the language of the Mutual Receipt Agreement contains "no clear and explicit evidence" of his intent to be bound in his individual capacity (*Salzman Sign Co. v Beck*, 10 NY2d 63, 67; *Walz v Todd & Honeywell*, 195 AD2d 455, citing *Savoy Record Co. v Cardinal Export Corp.*, 15 NY2d 1, 4; *Matter of Jevremov [Crisci]*, 129 AD2d 174), there is no requirement that "clear and explicit evidence" arise from the four corners of the agreement in question. A question of fact exists where there are conflicts within the document (*see*, *Gerald Syndicate v Negev Home Made Foods*, 198 AD2d 92, *lv dismissed* 83 NY2d 845). Dr. Beeren's apparent refusal to commit both himself and the Stedelijk Museum to defending the restoration, coupled with his apparent consent to represent in public that the restoration was successful and that the painting was in good and satisfactory condition, may be construed as his individual agreement to assert that the restoration was "good and satisfactory". His argument that the handwritten clause in the Mutual Receipt Agreement merely repeated the Museum's obligation as stated in the letter agreement of August 1, 1991 is without merit in that it effectively construes

the handwritten clause as meaningless. Such a construction is improper (*see, Two Guys v S.F.R. Realty Assocs.*, 63 NY2d 396, 403; *Brown v Keating*, 182 AD2d 552). Ultimately, the "clear and explicit evidence" requirement raises a question of sufficiency of evidence, which should not be tested on a CPLR 3211 (a) (7) motion.

Dr. Beeren's contention that there was no consideration for the Mutual Receipt Agreement as a matter of law should be rejected for the same reasons as Ms. Bracht's similar argument. His contention that the agreement did not require him to defend the restoration should be rejected since it improperly construes the handwritten agreement as meaningless, as discussed above.

Finally, Dr. Beeren's contention that the court did not have personal jurisdiction over him pursuant to CPLR 302 (a) (1) must also be rejected. The fact that he negotiated and signed in New York the very contract that is the basis for the cause of action against him is sufficient basis for long-arm jurisdiction (*see, Reiner & Co. v Schwartz*, 41 NY2d 648, 653; *Firegreen Ltd. v Claxton*, 160 AD2d 409, 411). His argument that he did not sign the contract in his individual capacity is a substantive issue that in this instance, as mentioned previously, must await discovery. Concur—Rosenberger, J. P., Wallach, Kupferman, Ross and Williams, JJ.