CONMED CORPORATION, and Aspen Laboratories, Inc., a wholly-owned subsidiary of Conmed Corporation, Plaintiffs,

v.

ERBE ELECTROMEDIZIN GMBH, and ERBE USA, Inc., Defendants.

No. 00–CV–0987.

United States District Court, N.D. New York.

March 7, 2001.

Hancock & Estabrook LLP, for Plaintiffs Conmed Corporation and Aspen Laboratories, Inc., Syracuse, NY, James R. Muldoon, John R. Powers, of counsel.

Mackenzie, Smith, Lewis, Michell & Hughes LLP, for Defendants ERBE Electromedizin GmbH and ERBE USA, Inc., Syracuse, NY, Dennis P. Hennigan, of counsel.

Gardner, Carton & Douglas, for Defendants ERBE Electromedizin, GmbH and ERBE USA, Inc., Washington, D.C., Charles C. Lemley, of counsel.

### AMENDED MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On June 22, 2000, plaintiffs Conmed Corporation ("Conmed") and Aspen Laboratories, Inc. ("Aspen") (collectively "plaintiffs") commenced the instant action against defendants ERBE Electromedizin GmbH and ERBE USA, Inc. (collectively "ERBE" or "defendants") pursuant to 28 U.S.C. §§ 2201, 2202 and 1338, and the Patent Laws of the United States, Title 35 of the United States Code, and various state laws. Plaintiffs are asserting seven causes of action for (1) a declaratory judgment of non-infringement of patent; (2) a declaratory judgment of invalidity of patent; (3) a declaratory judgment of unenforceability of patent; (4) tortious interference with contractual relations; (5) tortious interference with prospective business relations; (6) false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125; and (7) common law unfair competition. The complaint seeks compensatory and punitive damages, attorneys' fees and costs, and injunctive relief.

Defendants move to dismiss the first, second, and third causes of action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and the four remaining causes of action pursuant to Federal Rule of Civil Procedure

12(b)(6) for failure to state a cause of action. Plaintiffs oppose.

Oral argument was heard on January 12, 2001, in Utica, New York. Decision was reserved. For the reasons that follow, the motion will be denied.

## II. *FACTS*

This action arises out of an alleged threat by ERBE's CEO, Christian Erbe, to seek an injunction to halt the marketing of a flexible argon probe by Conmed. The following are the undisputed facts in this case, and—where noted—the disputed facts as alleged by the nonmoving plaintiffs.

Conmed and ERBE are rival manufacturers of surgical devices, accessories, and support equipment. Each sells a comparable argon gas-assisted gastrointestinal coagulation probe in the United States. Conmed's product line is known as the "Argon Beam Coagulation" ("ABC®") series of products. The principal product in this series is the Conmed System 7500TM Electrosurgical Generator with ABC® technology (the "ABC generator"), which is manufactured by Aspen. The ABC generator is fully protected under patents owned by the plaintiffs. This generator has various attachable accessories for use in different surgical procedures. These attachments are generally not compatible with other units. One such accessory, which is the specific product at issue in this lawsuit, is the ABC® Flex Gl Probe (the "Gl probe").

ERBE manufactures and markets a rival system—the ERBE APC300TM "Argon Plasma Coagulator" (the "APC 300"). Just as with Conmed's system, the ERBE APC 300 system offers an argon gas-assisted Gl probe as an accessory. Defendants' probe is protected by United States Patent No. 5,720,745 (the "'745 patent"). The availability of such a probe is an important factor to customers considering the purchase of either Conmed's or ERBE's electrosurgical generators. In addition, the probes are disposable attachments, and are not intended to be reused. Because the probes are disposable, their continued availability is a relevant consideration to potential customers.

The complaint alleges that in the fall of 1999, the parties were engaged in settlement negotiations over an unrelated litigation when ERBE suggested that Conmed needed to take a license of the '745 patent in order to continue selling its Gl probe. Conmed responded to this request with a detailed response from its patent counsel, setting forth the reasons why the Gl probe did not infringe the defendants' '745 patent. At that time, plaintiffs believed that the defendants were satisfied with this response, and that the matter was resolved.

Conmed alleges that in February 2000, it subsequently learned from a sales representative in California that ERBE was implying in written marketing materials that plaintiffs' Gl probe infringed the '745 patent. These materials contained a head-to-head comparison of the argon gas-assisted Gl probes of the two companies, and emphasized the superiority of the ERBE probe through material misrepresentations and falsehoods—including a purported advantage based on ERBE's superior patent protection. Conmed received similar reports from other sources over the next several months.

This course of deceptive and unlawful marketing culminated in the above-referenced statement of Christian Erbe, which predicated the instant lawsuit. This statement—that defendants were moving rapidly to halt plaintiffs' manufacturing of flexible argon probe devices—was repeated to a potential customer of plaintiffs in a letter written by Steve Cramton, an authorized dealer of ERBE products (the "Cramton letter").

The Cramton letter, which was sent to Dr. Richard Curtis ("Dr. Curtis") of Newton Wellesley Hospital in Massachusetts, attempted to discourage Dr. Curtis from purchasing the Conmed unit by claiming that "[t]here are significant considerations

regarding instrumentation, patent issues, and compatibility with endoscopes." The letter then stated that "Christian Erbe has indicated that ERBE, with its patents covering (10) claims and (48) drawings, is moving rapidly to cease Conmed's marketing of flexible Argon probes." Conmed alleges that this statement, and ERBE's course of false and misleading marketing practices have poisoned the market for plaintiffs' products because customers will not buy plaintiffs' ABC generator if they believe that the GI probe will become unavailable as a result of litigation threatened by defendants.

Conmed also alleges that it learned of the Cramton letter—and Christian Erbe's threat of patent litigation—when a customer asked one of its sales representative if the parties were currently engaged in patent litigation. In addition, plaintiffs assert that ERBE's provision of competitive patent-related information to a sales representative is consistent with industry practice because "[i]n the medical device industry, distributors and sales representatives for manufacturers typically do not have familiarity with patents and generally rely on statements and materials provided by manufacturers on such issues." *See* Plaintiffs' Opposition at 5 n. 3. This practice, in plaintiffs' view, made the purported threat by Christian Erbe more credible, and led to the development of an apprehension by plaintiffs that patent litigation was imminent.

Shortly after learning of the contents of the Cramton letter, Conmed commenced the instant action. A letter from plaintiffs' general counsel, Daniel S. Jonas ("Jonas"), accompanied service of the complaint upon the defendants. This letter stated, in part, that

It appears to us at this time, however, that ERBE *either* believes that CONMED and Aspen infringe ERBE's United States Patent 5,720,745, *or* ERBE believes that it is acceptable in ERBE's commercial marketing, to imply that CONMED's products may become un-

available as a result of patent litigation that ERBE has no intention of commencing.

Exhibit "A" to Defendants' Motion to Dismiss the Complaint (the "Jonas letter") (emphasis added). This letter was marked "For Settlement Purposes Only" and contained an invitation by Jonas to contact him to discuss settlement of this action. The instant motion followed.

## III. DISCUSSION

### A. 12(b)(1) Motion to Dismiss

#### 1. Standard of Review

■ If challenged, a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996). When a defendant moves to dismiss a cause of action pursuant to Fed.R.Civ.P. 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars–Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583 (Fed.Cir.1993). For purposes of such a motion, "the allegations in the complaint are not controlling ... and only uncontroverted factual allegations are accepted as true." *Id.* "All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court." *Id.* at 1584. On such a motion, both the movant and the pleader are permitted to "use affidavits and other pleading materials to support and oppose such motions." *Kamen v. American Telephone and Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir.1986).

#### 2. Existence of Subject–Matter Jurisdiction

■ With regard to plaintiffs' *first, second,* and *third* causes of action for a declaratory judgment of patent noninfringement, invalidity, and unenforceability, this court has subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, only if a case of actual controversy

existed between the parties at the time the complaint was filed. A party may not "obtain a declaratory judgment merely because it would like an advisory opinion on whether it would be liable for patent infringement if it were to initiate some merely contemplated activity." *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed.Cir.1988). In order for subject matter jurisdiction to lie, "the conflict must be real and immediate." *Id.* at 735.

■ There is a two-part test for determining whether an actual controversy exists in a declaratory judgment action for patent noninfringement, invalidity, or unenforceability. First, courts look at the conduct of the defendant to see if there is "an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the plaintiff that it will face an infringement suit." Second, "there must be conduct on the part of the plaintiff which could constitute infringement or concrete steps taken with the intent to conduct such activity." *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed.Cir.1993).[1] The first element turns on the conduct of the defendants, while the infringement element depends on the conduct of the asserted infringers. *Id.* The "purpose of the two-part test is to determine whether the need for judicial attention is real and immediate or is prospective and uncertain of occurrence." *Id.* (Citations omitted.)

Application of the first prong of the test is not limited to express charges of infringement or threat of suit. A reasonable apprehension of patent litigation "may be induced by subtler conduct if that conduct rises 'to a level sufficient to indicate an intent [on the part of the patentee] to enforce its patent,' i.e. to initiate an infringement action." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed.Cir. 1996) (quoting *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed.Cir.1992)). In making this determination, the court must consider the "totality of the circumstances." *Arrowhead*, 846 F.2d at 736. *See also EMC*, 89 F.3d at 812 (the "inquiry does not turn on whether the parties have used particular 'magic words'"). The test requires an objective evaluation of the facts as they existed and were known to the plaintiffs as of the date the complaint was filed. *Arrowhead*, 846 F.2d at 736.[2]

One of the underlying purposes of the Declaratory Judgment Act is to prevent the scenario where, in the colorful words of the Federal Circuit,

> A patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-cus-

1. ERBE also moved to dismiss the first, second, and third causes of action on the part of Aspen, on the grounds that Aspen was not engaged in any conduct that would constitute patent infringement. *See* Defendants' Memorandum of Law in Support of Motion to Dismiss at 19 ("Def. Mem."). However, it appears that this assertion is incorrect, and that Aspen is a proper party to this action. *See* Plaintiffs' Opposition at 6 n. 4 (averring that Aspen is currently selling the GI probe, a present activity that could constitute infringement). Accordingly, defendants' motion must be dismissed to the extent it seeks dismissal of Aspen's claims on this basis.

2. While the first prong of the test does require an objective evaluation of the defendants' conduct, there has been considerable argument by the parties as to whether or not the *plaintiffs'* subjective beliefs are also relevant to this inquiry. Defendants have argued that the finding that the plaintiffs' apprehension of litigation is "reasonable" necessarily assumes that the plaintiffs had an actual apprehension of such litigation. Defendants argue that if plaintiffs did not have an actual apprehension that litigation was imminent, this prong is not satisfied—because it is impossible for the court to judge the reasonableness of an apprehension that did not exist. Plaintiffs argue in opposition that the language of the case law requires the court to consider only the defendants' conduct in the first part of the analysis. On this point, the defendants have the more persuasive argument; however, because, as noted below, the plaintiffs did have an actual apprehension of litigation in this case, the point is moot.

tomer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity.

*Arrowhead,* 846 F.2d at 734–735 (internal citation omitted). Stated more directly, the purpose of a declaratory judgment action such as this is to permit a business to stop its competitor from harming it by claiming legal rights which it does not, in fact, possess. Where, as here, the mere claim of such rights by a competitor causes injury by poisoning the market for a party's product or service, the aggrieved party has the right to seek a declaratory judgment.

█ In this case, it is clear that there is jurisdiction to hear plaintiffs' declaratory judgment action. ERBE's statement to a potential customer that it was "moving rapidly to cease Conmed's marketing of flexible Argon devices" (when, in fact, it was not taking *any* action to halt Conmed's marketing of the Gl probe) is exactly the sort of damaging claim that the Declaratory Judgment Act is designed to address. As noted above, because the Gl probe is a disposable attachment, its continued availability is a significant consideration to potential customers considering the purchase of an ABC generator. Defendants' claims of patent infringement as to the Gl probe, therefore, would likely "infect the competitive environment" for argon beam coagulation systems and have a serious effect on Conmed's ability to sell its entire ABC generator system. If, as appears to be the case here, the mere

threat of patent litigation was sufficient to achieve defendants' marketing objectives, there would be no need for defendants to actually commence such litigation.

At oral argument, counsel for ERBE argued that Christian Erbe's alleged statement was not actionable because it was not necessarily a threat of litigation, but could instead be interpreted to mean that the defendants intended to drive Conmed from the marketplace by manufacturing and marketing a superior product. This argument is utterly implausible and incredible. It is clear from the statement that defendant's were referencing the exercise of their patent rights, and not the ultimate effects of free-market competition, when ERBE spoke of "moving rapidly" to cease Conmed's marketing of the Gl probe.[3]

ERBE relies upon the Federal Circuit's decision in *Phillips Plastics* for the proposition that the communication at issue in this case is inadequate as a matter of law to establish circumstances "sufficiently adverse to create a justiciable controversy." *Med–Tec, Inc. v. Kostich,* 980 F.Supp. 1315, 1325 (N.D.Iowa 1997) (citing *Phillips Plastics,* 57 F.3d at 1053). This reliance is misplaced. In *Phillips Plastics,* the patentee neither "stated *nor suggested* that it would pursue legal recourse" if the alleged infringer failed to accede to its demands. *Med–Tec,* 980 F.Supp. at 1325. *See also Clay Paky, S.p.A. v. Vari–Lite, Inc.,* 2000 WL 977709 (S.D.N.Y.2000). Even giving ERBE the benefit of a liberal reading of the Cramton letter, it is clear that, at the

3. The intent of Christian Erbe in making this statement is further evidenced by the history of dealings between the parties. At a prior settlement negotiation on an unrelated litigation, ERBE had raised, but never resolved, the question of whether or not the Conmed Gl probe infringed upon the '745 patent. Defendants had, in fact, demanded that plaintiffs take a license of the '745 patent for the sale of the Gl probe. *See* Jonas Decl. ¶¶ 7–8. While it is true that, as defendants have argued, the mere offer of a patent license to a competitor is not sufficient to give rise to a declaratory judgment action, *see Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,* 57 F.3d

1051, 1053 (Fed.Cir.1995), that is not the purpose for which it is offered here. This demand is offered to demonstrate' ERBE's belief that Conmed's Gl probe infringed its patent because there would be no need for a license in the absence of such infringement, and to show the context in which Christian Erbe's statement was made. The demand that plaintiffs take a patent, as well as the evidence showing that defendants had repeatedly referenced its superior patent rights, and by implication, plaintiffs' infringement of the same, is relevant to the instant action when considered in concert with the threat of litigation contained in the Cramton letter.

least, the letter contained the "suggestion" that ERBE might resort to litigation.

ERBE argues that even assuming that Christian Erbe's statement could be interpreted as a threat of litigation, any appearance of a reasonable apprehension of litigation on the part of Conmed is overcome by the "admission" in the Jonas letter that plaintiffs did not believe that defendants actually intended to sue them over the marketing of the Gl probe.[4] According to defendants, the statement that "ERBE either believes that Conmed and Aspen infringe [the '745 patent], or ERBE believes that it is acceptable in ERBE's commercial marketing, to imply that CONMED's products may become unavailable as a result of patent litigation that ERBE has no intention of commencing" means that plaintiffs believed that defendants had no intention of commencing patent litigation against them. A fair reading of the Jonas letter does not support this interpretation.

The Jonas letter does not, as ERBE asserts, state unequivocally that Conmed did not believe that defendants intended to sue it. Instead, the letter merely states alternatives: *either* that ERBE believed its patent was being infringed by plaintiffs *or* that defendants were fraudulently representing to their customers that they did so believe. The letter is not an admission of Conmed's mental state, but instead a statement as to Conmed's perceived mental state of ERBE. Because at least one of these perceived mental states is that de-

fendants believed that plaintiffs infringed the '745 patent and intended to move rapidly to cease plaintiffs' marketing of the Gl probe, the letter supports, rather than undermines, plaintiffs' argument that they had a reasonable apprehension that patent litigation was imminent.

### 3. *Discretion to Decline Jurisdiction*

■ The mere fact that the two-part test for subject matter jurisdiction is satisfied does not end the inquiry concerning the defendants' motion to dismiss. The Declaratory Judgment Act accords district courts a "unique breadth of . . . discretion to decline to enter a declaratory judgment." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Such discretion is not unfettered, however, and must be exercised in accordance with the principles of the Declaratory Judgment Act and sound judicial administration. *See EMC*, 89 F.3d at 813–14.

The defendants urge the court to exercise its discretion to decline to hear the declaratory judgment causes of action on the grounds that the Jonas letter demonstrates that Conmed did not have a reasonable apprehension of litigation, and that plaintiffs actually filed this action to gain advantage in negotiations over the licensing of the '745 patent and for the tactical purpose of forum shopping.[5] To do otherwise, they argue, would reward plaintiffs'

---

**4.** Plaintiffs have argued that this letter is inadmissible as an offer to compromise under Federal Rule of Evidence 408; however, the letter may be considered for purposes other than to "prove liability for or invalidity of the claim or its amount" pursuant to that rule. Accordingly, the letter will be considered for the limited purpose of impeachment of plaintiffs' claim of reasonable apprehension of patent litigation. *See Brocklesby v. U.S.*, 767 F.2d 1288, 1292–93 (9th Cir.1985).

**5.** Though ERBE has not expressly identified any reason why it believes that Conmed "forum shopped" this case in the Northern District of New York, it appears that defendants are suggesting that the Northern District is a more desirable place for Conmed to litigate

the instant action because Conmed is headquartered in Utica, New York. Defendants apparently assume that plaintiffs will somehow find a more sympathetic ear if they litigate in their home state. However, defendants have wholly failed to overcome "[t]he general rule [favoring] the forum of the first-filed action, whether or not it is a declaratory action" and has not adduced any "'sound reasons that would make it unjust or inefficient to continue the first-filed action.'" *Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.*, 1996 WL 71492, \*15 (S.D.N.Y. 1996) (quoting *Genentech, Inc. v. Eli Lilly*, 998 F.2d 931, 937–38 (Fed.Cir.1993) (citations omitted)).

inequitable behavior in resorting to forum shopping and use of the declaratory judgment action as a heavy-handed negotiating tool. For the reasons that follow, this argument is not persuasive.

It is true that numerous cases have held that it is " 'inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy of promoting extra-judicial dispute resolution, and conservation of judicial resources,' " and that courts "may take into account the pendency of serious negotiations ... in determining to exercise jurisdiction over a declaratory judgment action." *EMC*, 89 F.3d at 814 (quoting *Davox Corp. v. Digital Systems Int'l, Inc.*, 846 F.Supp. 144, 148 (D.Mass. 1993)). However, it is undisputed that at the time plaintiffs commenced the instant action, there were no negotiations ongoing between the parties. As such, it simply cannot be said that the plaintiffs resorted to the declaratory judgment action in order to gain an advantage in any ongoing negotiations.

Nevertheless, ERBE argues that the Jonas letter's invitation to discuss settlement of the newly-filed action evidences an improper motive. Defendants argue that this is so because, given the letter's "admission" that plaintiffs had no reasonable apprehension of litigation, the only possible motives for the instant lawsuit must be improper. While it is true that cases have held that it is an abuse of the declaratory judgment process to commence such a declaratory judgment action for the sole purpose of gaining an advantage in negotiations, *see EMC*, 89 F.3d at 814, as noted above, the letter contains no such "admission," and the invitation to discuss settlement negotiations simply reflects a desire on plaintiffs' part to avoid litigation if at all possible. In these circumstances, it would not be inequitable to have this dispute litigated in plaintiffs' chosen forum.

Defense counsel ardently argued at oral argument, however, that this case is analogous to *EMC*, and that the reasons which supported a decline of jurisdiction in that case are equally present here. This is simply not the case. In *EMC*, the plaintiff was found to have "abuse[d] the declaratory judgment device to obtain a more favorable bargaining position in its ongoing negotiations with the patentee and also to undermine the value of the patent so as to impede its sale or licensing to a third party." *Id.* at 814. Thus, it was appropriate to dismiss the case in favor of a forum more convenient to the defendants, which had been lulled into deferring its possible suit based on EMC's representations regarding its interest in negotiating rather than litigating. *Id.* at 807.

As discussed above, in the instant case, plaintiffs had a proper basis for bringing this suit on June 22, 2000. The plaintiffs had a reasonable apprehension of imminent patent litigation by defendants, and the factors favoring the exercise of discretion in *EMC* are wholly absent from the instant case. There is no allegation that ERBE exercised forbearance in the filing of an action on its own part because of any representations made by plaintiffs. Moreover, it is clear that plaintiffs did not file this action to bolster their bargaining position in ongoing patent negotiations for the simple reason that the record demonstrates that there were no negotiations ongoing between the parties at the time this action was filed. Because the record is devoid of any evidence demonstrated that plaintiffs commenced this action as an abuse of the declaratory judgment process, a decline of jurisdiction is not warranted.

### B. *12(b)(6) Motion To Dismiss*

#### 1. *Standard of Review*

In deciding a Rule 12(b)(6) motion, a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond a reasonable doubt that the [plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to re-

lief.' " *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. *See, e.g., Clapp v. Greene,* 743 F.Supp. 273, 276 (S.D.N.Y.1990); *Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir.1988).

### 2. *Sufficiency of the Complaint*

Defendants argue that the allegations contained in plaintiffs' complaint are not sufficient to state a cause of action under the *fourth, fifth, sixth* and *seventh* theories of relief. As noted below, plaintiffs have alleged the requisite elements for these causes of action, and have done so with sufficient factual allegations to meet the requirements of Fed.R.Civ.P. 8.

Federal Rule of Civil Procedure 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This minimal pleading requirement is satisfied where, as here, the plaintiffs plead all of the essential elements of the causes of action alleged. *See Kirkpatrick v. Merit Behavioral Care Corp.,* 2000 WL 1946694, *4 (D.Vt.2000) ("Under the federal system of 'notice' pleading, a complaint does not have to set forth the specific legal theory or theories justifying the relief sought, but need only set forth a 'short and plain statement of the claim showing that the pleader is entitled to relief.' The legal theories upon which a plaintiff will rely at trial may be developed during the discovery process, refined at pretrial conferences, and tested by motion for summary judgment.") (internal citation omitted) (citing, *e.g., Flickinger v. Harold C. Brown & Co.,* 947 F.2d 595, 600 (2d Cir.1991)). Plaintiffs' complaint does contain a statement of the facts at issue in this case. Defendants' objections based on the level of specificity with which plaintiffs have pled the facts comprising the elements of these various causes of action are, therefore, misplaced.

### a. *Tortious Interference with Contractual Relations*

■ Plaintiffs' *fourth* cause of action seeks recovery for ERBE's alleged tortious interference with contractual relations. The elements of such a cause of action are: (1) the existence of a valid contract; (2) defendants' intentional and unjustifiable interference with the performance thereof; and (3) damages suffered as a result of defendants' interference. *Daniel Goldreyer, Ltd. v. Van de Wetering,* 217 A.D.2d 434, 630 N.Y.S.2d 18 (1st Dep't 1995). It is clear that plaintiffs have pled the requisite elements of this cause of action.

The complaint alleges (1) the existence of "valid contractual relationships ... between Plaintiffs and various customers," Complaint ¶ 50; (2) that defendants "knew of said contractual relationships" and "intentionally interfered with [them] to induce or cause a breach or termination" and "intentionally induced third parties not to perform said contracts," Complaint ¶¶ 51, 52; and (3) resulting damage to plaintiffs, Complaint ¶ 53. Because the complaint alleges facts which, if taken as true, would entitle plaintiffs to recover on this cause of action, defendants' motion must be denied as to plaintiffs' fourth cause of action.

### b. *Tortious Interference with Prospective Business Relations*

■ Plaintiffs' *fifth* cause of action is for tortious interference with prospective business relations. The elements of this cause of action are: (1) intentional conduct by the defendants which causes a third person not to enter into a prospective contractual relation with the plaintiffs who are his competitor; and (2) the use of wrongful means or exclusively malicious motivation. *See, e.g., NBT Bancorp, Inc. v. Fleet/Norstar Financial Group, Inc.,* 87 N.Y.2d 614,

621–22, 641 N.Y.S.2d 581, 664 N.E.2d 492 (1996); *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 189–90, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980).

■ Plaintiffs have alleged interference by ERBE with plaintiffs' prospective customers. *See* Complaint ¶ 53 In addition, plaintiffs allege that ERBE employed improper means in that ERBE utilized the "threat of litigation." *See* Complaint ¶¶ 29–30. The Second Circuit has held, in interpreting New York law, that interfering with prospective business relations through the threat of litigation constitutes "improper means." *See Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70, 75 (2d Cir.1986). Accordingly, plaintiffs' complaint does state a cause of action for tortious interference with prospective business relations.

### c. *False Advertising and Unfair Competition (Lanham Act)*

■ Plaintiffs' *sixth* cause of action alleges false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125. In order to plead a claim for relief under this statute, plaintiffs must allege that defendants (1) made false or misleading representations (2) for goods, (3) in interstate commerce, (4) in commercial advertising or promotion, (5) about a material facet of plaintiffs' product, (6) that caused damage to plaintiffs. *See Spotless Enterprises v. Carlisle Plastics*, 56 F.Supp.2d 274, 277 (E.D.N.Y.1999).

■ The crux of defendants' objection to this cause of action is that the communications alleged in the complaint do not constitute commercial advertising or promotion. Commercial advertising or promotion under the Lanham Act is defined as "(1) commercial speech; (2) made by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy the defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry." *Nadel v. Play by Play Toys*, 34 F.Supp.2d 180, 186 (S.D.N.Y.1999), *aff'd in relevant part*, 208 F.3d 368 (2d Cir.2000).

Defendants' objection is misplaced. Not only do plaintiffs specifically allege that the false statements at issue were made "in connection with the commercial advertising and/or promotion of their own goods," *see* Complaint ¶ 66, it is clear that they have sufficiently alleged facts which demonstrate that the communications at issue constitute commercial advertising or promotion within the relevant industry. *See* Complaint ¶ ¶ 29, 32, 33. Accordingly, plaintiffs have stated a claim under the Lanham Act.

### d. *Common Law Unfair Competition*

■ Plaintiffs' *seventh*, and final, claim for relief is for common law unfair competition. The elements of this cause of action are the same as those under the Lanham Act, with the additional allegation of bad faith. Defendants concede that the complaint does allege bad faith, but characterizes this allegation as "conclusory." *See* Def. Mem. at 26. In light of the finding above that plaintiffs have pled a cause of action under the Lanham Act, the plaintiffs' additional allegation of bad faith on the part of defendants is sufficient (at this stage of the litigation, where discovery has yet to commence) to state a claim for relief under a theory of common law unfair competition.

## IV. CONCLUSION

There is subject matter jurisdiction over the declaratory judgment causes of action and no valid reason to exercise discretion to decline such jurisdiction. The complaint alleges sufficient facts to sustain the remaining causes of action. Therefore, it is hereby

ORDERED that

1. Defendants ERBE Electromedizin GmbH and ERBE USA, Inc.'s motion to

dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) is DENIED; and

2. Defendants shall file and serve an answer to the complaint on or before March 12, 2001.

IT IS SO ORDERED.