| |
|---|
| **Kohler v West End 84 Units LLC** |
| 2024 NY Slip Op 34215(U) |
| November 26, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 654985/2023 |
| Judge: Lyle E. Frank |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| PRESENT: | **HON. LYLE E. FRANK** | **PART** **11M** |
| | *Justice* | |

-----------------------------------------------------------------------------X

PAULETTE KOHLER, KJERSTI INGA EGGERUD,

       Plaintiff,

      - v -

WEST END 84 UNITS LLC,ROANNE P. GOLDFEIN,
SANDRA GENTILE, THE BOARD OF MANAGERS OF 500
WEST END AVENUE, ARTURO DEPENA, WILLIAM
BRICKER, JACK PACE, SANDRA LEE, ELIZABETH
ADINOLFI, PHILLIPS NIZER LLP, CHARLES BARBUTI,
YVONNE AGBOBTAEN, RIVERSIDE PREMIER
REHABILITATION AND HEALING CENTER, LUCASZ
KOWALSKI, FIRSTSERVICE RESIDENTIAL NEW YORK,
INC.,JOHN AND JANE DOES 1 - 10

       Defendant.

| | |
|---|---|
| INDEX NO. | 654985/2023 |
| MOTION DATE | 04/01/2024 |
| MOTION SEQ. NO. | 004 |

**DECISION + ORDER ON
MOTION**

-----------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 004) 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 213, 214, 215, 216, 278, 340, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 414, 416, 417, 418, 419, 420, 421, 422

were read on this motion to/for       DISMISS       .

Upon the foregoing documents, defendants' motion to dismiss is granted in part and

denied in part.

## Background Facts and Procedural Posture

Ms. Paulette Kohler ("Kohler") has lived in one of the West End 84 Units LLC

("Landlord") rent-controlled apartments for over seventy years. Ms. Kohler is currently 94 years

old, widowed, and her only child died in 2020. In 2011, she met a Norwegian woman named

Kjersti Inga Eggerud ("Eggerud", collectively with Kohler "Plaintiffs"). The two women became

friends, and on March 21, 2021, Ms. Kohler executed a Durable Power of Attorney, Health Care

**654985/2023 EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No. 004**

**Page 1 of 27**

Proxy, and a Last Will & Testament that appointed Eggerud as her agent and sole beneficiary. These documents were executed by an attorney who had known Ms. Kohler for decades and they were duly witnessed and executed after it was confirmed that Ms. Kohler had the requisite mental capacity.

*The FBI Enters the Scene*

According to documents presented by Plaintiff, in June of 2021 an unknown person(s) contacted the FBI and alleged that Eggerud had engaged in elder abuse of Ms. Kohler. The FBI, according to these documents, conducted an initial assessment and attempted repeatedly to reach out to Ms. Kohler but she would not discuss the matter. In October, they called Eggerud and informed her of the report. Allegedly, on November 14 an FBI agent called Eggerud and informed her that the matter was closed and that there was no evidence against her. Then in December of 2021, the FBI closed the "Incident" and gave as a reason that the "[a]llegation could not be substantiated or is deemed mitigated at this time." There are several issues of disputed fact as to whether the FBI ever sent an agent to Ms. Kohler's apartment, what was said and done at such a meeting if it happened, and the extent to which the FBI communicated with various parties during this process.

*The Article 81 Guardianship Proceeding and Ultimate Reversal*

In late December 2021, Mrs. Kohler, who had just had surgery for an intestinal blockage, was transferred to the Riverside rehabilitation center for short term rehabilitation for recovery. Beginning in January of 2022, when Eggerud began attempting to enter Ms. Kohler's apartment to prepare it for her release from Riverside, Landlord (and others) refused Eggerud access to the apartment and declined to honor the power of attorney. The parties went back and forth on the matter, and in March of 2022 defendant Elizabeth Adinolfi ("Adinolfi"), a guardianship attorney

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**                                    **Page 2 of 27**
**Motion No.  004**

2 of 27

[* 2]

employed by defendant Phillips Nizer LLP ("PN", collectively with Adinolfi the "PN-Defendants"), filed an Article 81 petition to appoint a Guardian over Ms. Kohler (the "Guardianship Proceeding"). The PN-Defendants were counsel for the Landlord, and Adinolfi claimed during the special proceeding that it was at least in part motivated by threats to file suit by Eggerud's counsel if the POA was not honored by Landlord. At this proceeding, Adinolfi also alleged, among other things, that Ms. Kohler lacked capacity at the time that she executed the POA and that Eggerud was under investigation from the FBI.

In March the trial court granted the petition and appointed a temporary guardian over Mrs. Kohler, defendant Charles Barbuti ("Barbuti"). This decision was appealed, and the First Department overturned the decision in an order dated November 21, 2023 (the "Appeal Order"). That order reinstated the POA and health care proxy and vacated the temporary guardianship.

*Statement to NBC News*

An NBC News story about these events aired on October 14, 2022. Landlord prepared a statement for NBC (the "NBC Statement") and made several claims about the alleged FBI investigation, Ms. Kohler's financial affairs, and Eggerud's attempt to enter Ms. Kohler's apartment with the POA. The Landlord claimed to have been motivated to initiate the guardianship proceedings "[i]n an effort to protect Mrs. Kohler" and that they were hesitant to give access to Ms. Kohler's apartment to "someone under FBI investigation for financial abuse." The resulting story, as well as a subsequent one on November 2, 2022, repeated allegations of possible elder abuse by Eggerud.

The PN-Defendants claim to have been told by the FBI that they were "permitted to say: there are allegations that Ms. Kohler is a victim of financial fraud and that investigations are pending." The Plaintiffs interpret this language as meaning that the PN-Defendants were not

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**                    **Page 3 of 27**
**Motion No. 004**

3 of 27

[* 3]

authorized to state that Eggerud was an FBI suspect in a financial fraud investigation, and the PN-Defendants interpret this language as meaning that they were permitted to state to the public that Eggerud was being investigated for elder abuse by the FBI.

*This Motion's Procedural Posture*

Plaintiffs filed the present suit in November of 2023. They allege in the second amended complaint eighteen causes of action on behalf of Ms. Kohler and a further six on behalf of Eggerud. Broadly, the second amended complaint alleges a potential scheme to defraud Ms. Kohler of her rent-controlled apartment and various abuses of the guardianship process including alleged improper handling of Ms. Kohler's finances during the temporary guardianship. The PN-Defendants have brought the present motion to dismiss certain causes of action asserted against the PN-Defendants pursuant to the CPLR §§ 3016, 3211(a)(1), (5), (7) and (g), as well as the N.Y. Civ. Rights Law §§ 70-A and 76-A. They have also moved for damages and sanctions against Eggerud and her counsel.

**Standard of Review**

*CPLR § 3016*

Under CPLR § 3016(a), an action for libel or slander requires that "the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally." This heightened pleading standard requires that the complaint state with particularity "the substance, place, and manner of the alleged defamatory statements." *Dolcimascolo v. Board of Mgrs. Of Dorchester Towers Condominium*, 228 A.D.3d 452, 453 (1st Dept. 2024).

*CPLR § 3211(a)*

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No.  004**

**Page 4 of 27**

4 of 27

It is well settled that when considering a motion to dismiss pursuant to CPLR § 3211, "the pleading is to be liberally construed, accepting all the facts alleged in the pleading to be true and according the plaintiff the benefit of every possible inference." *Avgush v. Town of Yorktown*, 303 A.D.2d 340 (2d Dept. 2003). Dismissal of the complaint is warranted "if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery." *Connaughton v. Chipotle Mexican Grill, Inc*, 29 N.Y.3d 137, 142 (2017).

CPLR § 3211(a)(1) allows for a complaint to be dismissed if there is a "defense founded upon documentary evidence." Dismissal is only warranted under this provision if "the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law." *Leon v. Martinez,* 84 N.Y.2d 83, 88 (1994).

CPLR § 3211(a)(5) allows for a complaint to be dismissed because of a valid release. While a valid release generally "constitutes a complete bar", for a signed release the burden shifts to the plaintiff to "show that there has been fraud, duress, or some other fact which will be sufficient to void the release." *Centro Empesarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011).

A party may move for a judgment from the court dismissing causes of action asserted against them based on the fact that the pleading fails to state a cause of action. CPLR § 3211(a)(7). For motions to dismiss under this provision, "[i]nitially, the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law." *Guggenheimer v. Ginzburg*, 43 N.Y. 2d 268, 275 (1977).

*Anti-SLAPP*

**654985/2023  EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No.  004**

Page 5 of 27

5 of 27

CPLR § 3211(g)(1) states that when, in a motion to dismiss, the moving party has demonstrated that the claim subject to the motion is an "action involving public petition and participation" as defined in the Anti-SLAPP Law, the motion is to be granted "unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law." Unlike other CPLR § 3211 motions, once a showing is made that an action is a SLAPP suit, "the burden shifts to the plaintiff to demonstrate that the claim has a 'substantial basis in law'." *Reeves v. Associated Newspapers, Ltd.*, 2024 N.Y.App.Div. LEXIS 4459, *2 (1st Dept. 2024).

## Discussion

The PN-Defendants move to dismiss the second amended complaint as to them on six grounds: 1) res judicata and collateral estoppel; 2) violation of the New York Anti-SLAPP law; 3) the litigation and fair reporting privileges; 4) failure to state a claim under CPLR §§ 3106 and 3211(a)(7) as to the fraud and defamation claims; 5) failure to state a claim and statute of limitations as to the abuse of process claims; and finally 6) failure to state a claim as to the intentional and negligent infliction of emotional distress, Judiciary Law 487, tortious interference with contract, violation of the General Obligations Law, and aiding and abetting claims. For the reasons that follow, this motion is granted as to the third, fifth, seventh, ninth, tenth, fifteenth, sixteenth, and nineteenth causes of action and denied as to the rest.

### I: Res Judicata and Collateral Estoppel Do Not Bar Plaintiff's Claims

In the appeal of the Guardianship Proceeding, Plaintiffs requested Rule 130 sanctions against the PN-Defendants for bringing the Guardianship Proceeding in bad faith or frivolously. The First Department in the Appeal Order declined to issue sanctions. Here, the PN-Defendants argue that this bars the underlying suit under the principle of *res judicata*. Their reasoning is that

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No.  004**

**Page 6 of 27**

[* 6]

6 of 27

in that appeal, Plaintiffs made the same arguments regarding the basis used to support the Guardianship Proceeding allegations, knowledge of the FBI's involvement, and that the PN-Defendants acted to cause harm to Ms. Kohler. By declining to issue sanctions, PN-Defendants argue, the Appeal Order bars a suit arising out of the same transactions and facts. Furthermore, they argue, here Plaintiff's claims are barred by the principle of collateral estoppel because the Guardianship Proceeding's factual findings and conclusions remain valid despite the Appeal Order.

Plaintiffs argue that the suit is not barred by *res judicata* or collateral estoppel for several reasons, including that the First Department ordered fee shifting under the Mental Hygiene Law which is predicated on a finding of bad faith and that the court there only declined to issue to sanctions because it was not procedurally proper (it had not been briefed or moved for, simply asked for during oral argument), and did not reach the merits of a sanctions request.

*Res judicata* or claim preclusion is "designed to provide finality in the resolution of disputes to assure that parties may not be vexed by further litigation." *Reilly v. Reid*, 45 N.Y.2d 24, 28 (1978). It bars the re-litigation of the "same cause of action" that has had a valid and final judgment that "extinguishes the plaintiff's claim." *Id.*, at 28-29. Here the PN-Defendants do not argue that Plaintiff had a claim or cause of action against them that was adjudicated in the Appeal Order, but rather that the Appeal Order, in declining to issue sanctions, made certain findings on the merit of allegations arising from the same set of circumstances. This is more properly called a collateral estoppel or issue preclusion matter, not claim preclusion.

The PN-Defendants also argue that certain findings in the Guardianship Proceeding bar Plaintiffs' current claims through collateral estoppel. This legal concept prevents the same issues, rather than causes of action, from being litigated and applied "only where the issue in the second

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No. 004**

Page 7 of 27

7 of 27

action is identical to an issue which was raised, necessarily decided and material in the first action and the party who is being estopped had a full and fair opportunity to litigate the issue in the earlier action." *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 112 (2021). The Court of Appeals has "cautioned against the mechanical application of issue preclusion" and directs courts to "examine the realities of litigation". *Id.* At heart, the decision to apply collateral estoppel in a given case is whether relitigation of the issue should be allowed "in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results." *Id.*

### I(A): The Guardianship Proceeding Is Not a Basis for Collateral Estoppel and the First Department's Appeal Order is Ambiguous as to the Extent it Estops the Plaintiffs from Asserting Improper Motive for Bringing the Guardianship Proceeding

To begin with, the Guardianship Proceeding does not provide for collateral estoppel or *res judicata* because it was overturned on appeal. A "vacated decision accordingly lacks finality and cannot be given collateral estoppel effect." *Sage Realty Corp. v. Proskauer Rose LLP*, 251 A.D.2d 35, 39 (1st Dept. 1998). The issue then becomes what, if anything, is precluded by the Appeal Order. This short decision includes language stating that there was "no evidence" that the POA was not duly executed and proper, and that there was "no evidence of financial impropriety" by Eggerud. It also, however, ends with the statement that "[a]lthough [Landlord] was ultimately unable to prove its allegations, the petition was not frivolous within the meaning of 22 NYCRR § 130-1.1(c)." *Matter of Goldfein v. Kohler*, 221 A.D.3d 500, 502 (1st Dept. 2023). The PN-Defendants argue that this statement means that Plaintiffs are estopped from

**654985/2023  EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No. 004**

Page 8 of 27

8 of 27

bringing the underlying suit at all because it "arises out of identical transactions and facts as those in the Guardianship Proceeding" and the suit should be dismissed in its entirety.

But Plaintiffs argue that there were several issues involved in the underlying suit not litigated at either the Guardianship Proceeding or the appeal of that proceeding. They also content that the part of the Appeals Order referring to frivolity merely expounds on statements made during oral argument that the First Department would not be issuing sanctions under NYCRR § 130 for bringing a frivolous suit because that issue had not been motioned for or briefed. There is an additional complication brought by the fact that the First Department also ordered fee shifting in this matter. The "underlying purpose of the fee-shifting provisions of the Mental Hygiene Law [are] to discourage frivolous petitions." *In re Petty*, 256 A.D.2d 281, 283 (1st Dept. 1998). In fact, it is an "improvident" exercise in discretion to order fee shifting under this provision when there is "a lack of evidence that the proceeding was brought in bad faith." *Matter of Marjorie T. v. Sherwood*, 84 A.D.3d 1255, 1255 (2nd Dept. 2011).

Because this is a motion to dismiss brought by the PN-Defendants, the Plaintiffs are entitled to every favorable inference. At this stage of litigation, the ending statement in the Appeal Order could potentially be referring to the lack of motions or briefs relating to NYCRR § 130. There is a possible reasonable inference that the First Department had not decided on the merits regarding whether the Guardianship Proceeding was, at least to some degree, frivolously brought. It is not conclusively settled that the First Department decided on the merits that there had been no amount of bad faith connected to bringing that proceeding.

Furthermore, under the balance of considerations that the Court of Appeals directs courts to consider in *Simmons* and given that there are allegations by Plaintiffs as to information about the role of the FBI in these matters that they have obtained after the Appeal Order was issued,

**654985/2023  EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**  Page 9 of 27
**Motion No. 004**

9 of 27

the Court declines at this stage to say that the Appeal Order bars Plaintiffs from bringing their claims. Certainly, to extrapolate that sentence into an understanding that the present suit in its entirety, including as it does claims not actually litigated in the vacated Guardianship Proceeding and against parties who were not parties in that proceeding, would not be proper at this junction. Therefore, the motion to dismiss the second amended complaint on the grounds of *res judicata* and collateral estoppel is denied.

**II: Litigation and Fair Reporting Privileges Do Not Bar the Second Amended Complaint**

The PN-Defendants also move to dismiss the nineteenth and twentieth causes of action in the second amended complaint on the grounds that to the extent that they rely on statements made during legal proceedings, the litigation privilege provides complete protection. This absolute privilege confers "absolute immunity from liability for defamation […] for oral and written statements made by attorneys in connection with a proceeding before a court when such words and writings are material and pertinent to the questions involved." *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015). Plaintiffs argue that they do not "even suggest[] that [their] defamation claims are premised on anyone's in court statements." The nineteenth cause of action is a "claim for Defamation, Defamation per se, and Defamation by Implication for false statements to the FBI." The twentieth cause of action is a "claim for Defamation, Defamation per se, and Defamation by Implication for false statements to NBC News". While the PN-Defendants are correct that there is an absolute privilege preventing statements made during a proceeding from being the basis of a defamation claim, neither claim on their face is made for statements protected by the litigation privilege.

Although not sounding in defamation, the PN-Defendants make a conclusory allegation that the first, second, third, fifteenth, and twenty-first causes of action for abuse of process,

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**                    **Page 10 of 27**
**Motion No.  004**

10 of 27

intentional infliction of emotional distress, and fraud are "merely repackaged defamation claims" and would likewise be barred by the litigation privilege. The claims would need to be essentially a defamation cause of action based on statements made in court, because the litigation privilege only "exists in the context of defamation claims". *Rapaport v. Strategic Fin. Solutions, LLC*, 190 A.D.3d 657, 658 (1st Dept. 2021). The IIED and NIED claims in the second and third cause of action are pled in relation to *actions* taken by the PN-Defendants and others and are clearly not repackaged defamation claims. The abuse of process claims in the first and twenty-first claims likewise do not turn on statements protected by the privilege but rather on other aspects such as the motivation in bringing the Guardianship Proceeding.

The fifteenth cause of action for fraud does rely in part on statements made in court, alleging that the Defendants "made a number of knowingly false representations to the trial court in the guardianship case." Because it also involves statements made to the FBI and NBC news, this claim could not be entirely dismissed based on the litigation privilege, even if it were a defamation claim. But the question of whether the litigation privilege would bar *any* claims for fraud brought as a result of statements made in court raises an interesting issue. The PN-Defendants do not cite to any law that allows the litigation privilege to bar claims that undeniably sound in fraud, not defamation. Under the favorable inferences on the motion to dismiss standard, while the statements made during the two proceedings are certainly protected from defamation liability under the litigation privilege, the motion to dismiss non-defamation claims that involve in part statements made during court proceedings is denied.

*II.A: The Fair Reporting Privilege Does Not Bar the Defamation Claims Because the NBC News Statement Suggests More Serious Conduct than that Actually Suggested in the Proceeding*

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No.  004**

Page 11 of 27

11 of 27

The PN-Defendants also argue that the claims sounding in defamation that relate to the NBC News statements fail because the fair reporting privilege protects those statements. The fair reporting privilege comes from Civil Rights Law § 74, which states that "[a] civil action cannot be maintained against a person, firm or corporation, for the publication of a fair and true report of any judicial proceeding." The privilege applies when the "substance of the article [is] substantially accurate." *Holy Spirit Ass'n for Unification of World Christianity v. NY Times Co.*, 49 N.Y.2d 63, 67 (1979). The test for substantially accurate is "whether the published account of the proceeding would have a different effect on the reader's mind than the actual truth, if published." *Daniel Goldreyer, Ltd. V. Van De Wetering*, 217 A.D.2d 434, 436 (1st Dept. 1995). As a matter of law, the privilege does not attach if the "published account, along with the rest of the article, suggests more serious conduct than that actually suggested in the official proceeding." *Id.* Here, the language at issue in the NBC Statement reads:

> West End subsequently learned that an agent from the Federal Bureau of Investigation had come to the building seeking to question Mrs. Kohler in an investigation as to whether Mrs. Kohler was the possible victim of financial elder abuse, and that Ms. Eggerud was a suspect in said investigation. West End does not know who contacted the FBI or what triggered the investigation. West End also learned that over $150,000 had been removed from Mrs. Kohler's accounts, and that she neither recalled making those transactions nor had any knowledge of the disposition of those funds. West End was concerned that giving access to Mrs. Kohler's apartment to someone under FBI investigation for financial abuse would be grossly irresponsible and could cause her grave financial harm.

There are questions of fact as to what the parties knew regarding the role of the FBI at this stage, and the extent to which an official investigation had been opened into Eggerud or what precisely the PN-Defendants were authorized to say about the issue by the FBI. Furthermore, it had been conclusively revealed at this course in the proceedings that the

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No.  004**

**Page 12 of 27**

[* 12]

12 of 27

$150,000 transfer at issue was legitimately done by Ms. Kohler. The PN-Defendants argue that the NBC Statement accurately reflected the extent of their knowledge at the time the Guardianship Proceeding was brought (and this allegation is disputed), rather than the time the NBC Statement was made. But regardless, to bring up the specific allegations regarding the money transfer, connect them to the alleged investigation into Eggerud, and then fail to mention that Ms. Kohler had not lost that money but had called the bank to make the transfer herself, is not substantially accurate. It certainly suggests more serious misconduct by Eggerud than was actually shown in the Guardianship Proceeding, by leaving out the exonerating evidence that had since come to light. Therefore, the fair and true report privilege does not attach to the NBC Statement.

### III: The Anti-SLAPP[1] Law Does Not Bar the Defamation Claims

The PN-Defendants also have raised Anti-SLAPP issues in their motion to dismiss. Such actions, which typically sound in defamation, are "characterized as having little legal merit but are filed nonetheless to burden opponents with legal defense costs and the threat of liability and to discourage those who might wish to speak out in the future." *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 137 n.1 (1992). New York's Anti-SLAPP law was instituted to combat this trend and provides that a "defendant in an action involving public petition and participation" may maintain a claim to recover damages, "including costs and attorney's fees" from the party that commenced the action.

NY CLS Civ. R. § 70-a(1) Section 76-a(1)(a)(1) of the same law defines an "action involving public petition and participation" as a claim that is based on "any communication in a place open to the public or a public forum in connection with an issue of public interest", and

---

[1] SLAPP stands for Strategic Suits Against Public Participation.

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No.  004**

Page 13 of 27

subsection (1)(a)(2) further includes "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest." The term "public interest" is meant to be "construed broadly and shall mean any subject other than a purely private matter." NY CLS Civ. R. § 70-a(1)(d). Here, the allegedly defamatory statements were made in connection to allegations of elder abuse (an issue of public interest under such a broad interpretation) and were certainly made in a public forum.

The PN-Defendants have made a showing of a matter of public interest as to the defamation claims. But it is not clear that this case would overall meet the definition of a SLAPP suit. It certainly does not appear to be motivated by a desire to chill the PN-Defendant's free speech, but rather to seek relief for a host of alleged wrongs. The defamation claims are ancillary to the overall allegations of misuse of the guardianship proceeding, fraud, and abuse. But even if this case did satisfy the criteria for a SLAPP suit, it would still not warrant dismissal for the reasons explored below.

Because the defamation claims in the suit do involve a matter of public interest, and assuming *arguendo* that the underlying case is a SLAPP suit, then there would be a different burden-shifting framework then the normal burden under CPLR § 3211. At this stage, "the burden shifts to the plaintiff to demonstrate that the claim has a 'substantial basis in law'." *Reeves v. Associated Newspapers, Ltd.*, 228 A.D.3d 75, 77 (1st Dept. 2024). The term substantial basis is defined as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact." *Id*. A court that is reviewing a pleading for substantial basis "must look beyond the face of the pleadings to determine whether the claim alleged is supported by substantial evidence." *Id.*, at 89. And the overall test for substantial basis seeks to determine "roughly" if there are any "triable issues of material fact." *Id.*, at 88.

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No. 004**

**Page 14 of 27**

Here, the defamation claims against the PN-Defendants in the second amended complaint allege that defamatory statements were made to the FBI and NBC News. There are several issues of triable material fact going to the defamation claims, including who made what statements to the FBI that caused them to look at Eggerud in connection with potential elder abuse and whether the NBC Statement was accurate and authorized. The Plaintiffs have included copious amounts of evidence in the form of emails and affidavits going to the issue of the allegedly defamatory nature of the NBC Statement, along with papers and evidence going to show the state of the Guardianship Proceeding and what actual knowledge the parties had at the time the NBC Statement was made. They have adequately made out a showing of substantial basis for their defamation claims, and therefore these causes of action are not dismissible under the Anti-SLAPP law even if it would apply in this case.

**IV: The PN-Defendants Have Not Met Their Burden on the Abuse of Process Claims Therefore Dismissal is Improper**

The first and twenty-first causes of action in the second amended complaint are for Abuse of Process relating to the Guardianship Proceeding. The PN-Defendants move to dismiss these claims on the grounds that the claims are barred by the relevant statute of limitation. The PN-Defendants argue that the statute of limitations for Abuse of Process began to run when the Guardianship Proceeding was first filed, and the Plaintiffs argue that the time began to run with the First Department vacated the Guardianship Proceeding, thus giving Plaintiffs standing to bring a claim.

Abuse of Process is an intentional tort, and therefore subject to a one-year statute of limitations. *See, e.g., Beninati v. Nicotra*, 239 A.D.2d 242, 242 (1st Dept. 1997). The Fourth Department has held that "it is long settled that [abuse of process claims] accrue when the

**654985/2023 EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No. 004**

Page 15 of 27

15 of 27

plaintiff[s] first become entitled to maintain the action, i.e., when there is a determination favorable to plaintiff[s]." *10 Ellicott Sq. Ct. Corp. v. Violet Realty, Inc.*, 81 A.D.3d 1366, 1369 (4th Dept. 2011). Here, there was not a determination that was favorable to either plaintiff until the Appeal Order. Therefore, the First Department's decision to vacate the Guardianship Proceeding on November 21, 2023, the first determination favorable to the Plaintiffs, starts the clock for the statute of limitations. Here, the complaint was filed on January 31, 2024, and the abuse of process claims for both plaintiffs were timely.

PN-Defendants also move to dismiss these abuse of process claims for failure to state a claim, arguing among other reasons that the instigation of a guardianship proceeding is not the type of process that can give rise to an Abuse of Process claim. The elements of an Abuse of Process claim are "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984). For the first element, "the process used must involve an unlawful interference with one's person or property" and the mere institution of a civil suit is not enough. *Id.*

But here, the process that was allegedly abused went beyond mere institution of a civil suit through filing a summons, and a guardianship by its very nature necessarily involves an interference (usually fully lawful) with both the person and property of the allegedly incapacitated person. Furthermore, such a proceeding is in the form of an ex parte Article 81 petition, not simply service of a complaint. Although this issue does not appear to have been decided before in the New York courts, the Court here has decided that an Article 81 guardianship proceeding could potentially form the basis for an abuse of process claim.

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**                    **Page 16 of 27**
**Motion No. 004**

16 of 27

Certainly, on a motion to dismiss standard giving the Plaintiffs every favorable inference, the fact that the abuse of process claim centers around a guardianship proceeding does not in and of itself amount to failure to state a claim. It is true that a "malicious motive alone, however, does not give rise to a cause of action for abuse of process." *Curiano*, at 117. But here Plaintiffs have pled more than a malicious motive in bringing the Article 81 petition and have also alleged facts that go to improper behavior throughout the process of that case. They have also pled facts alleging that the guardianship process (available in New York to shield incapacitated persons in true need of protection) was used improperly in an attempt to access Ms. Kohler's apartment and funds. The PN-Defendants have not met their burden on a motion to dismiss regarding the abuse of process claims and therefore it would be improper to dismiss these causes of action at this time.

**V: Failure to State a Claim Analysis**

The PN-Defendants have moved to dismiss multiple causes of action in the second amended complaint for failure to state a claim. For the reasons that follow, this portion of the PN-Defendants' motion is granted in part and denied in part.

*V.A.: The Fraud Claims in the Fifteenth and Sixteenth Causes of Action Fail to State a Claim*

The PN-Defendants argue that the fraud claims in the second amended complaint must be dismissed under CPLR §§ 3211(a)(7) and 3106 because they are not pled with the requisite specificity and fail to state a claim. These are found in the fifteenth cause of action and conspiracy to commit fraud in the sixteenth cause of action. Pleading a prima facie claim of fraud requires that the plaintiff "allege misrepresentation or concealment of a material fact, falsity, scienter on the part of the wrongdoer, justifiable reliance, and resulting injury." *IKB Intl.*

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No.  004**

**Page 17 of 27**

17 of 27

*S.A. v. Morgan Stanley*, 142 A.D.3d 447, 448 (1st Dept. 2016). The Plaintiffs here have pled facts alleging that the various defendants in this case made knowingly false representations to the trial court in the Guardianship Proceeding, to the FBI, and to NBC news. The representations made by the PN-Defendants to the trial court are covered by the litigation privilege, as discussed above, but any statement made by PN-Defendants to the FBI, or the NBC Statement are not covered by privilege.

The PN-Defendants move to dismiss the two fraud claims on the grounds that the second amended complaint has failed to allege that either of the plaintiffs justifiably relied on any allegedly false or misleading representation. While the Plaintiffs have pled facts about the reliance of other parties on statements the PN-Defendants allegedly made to the FBI or NBC News in the fraud claims, they have not alleged that either Eggerud or Ms. Kohler relied on such representations beyond conclusory statements to that effect. Therefore, the fifteenth and sixteenth causes of action are dismissed as to the PN-Defendants for failure to state a claim.

### *V.B: The Nineteenth Cause of Action for Defamation Fails to Adequately State a Claim but the Twentieth Cause of Action for Defamation Does State a Valid Claim*

The PN-Defendants also move to dismiss the nineteenth and twentieth causes of action for failure to state a claim. In these, the Plaintiffs allege defamation, defamation per se, and defamation by implication. In order to establish a defamation claim, "the plaintiff must show (1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Stepanov v. Dow Jones & Co., Inc.*, 120 A.D.3d 28, 34 (1st Dept. 2014). At the motion to dismiss stage, a court must determine "whether the statements, considered in the

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**                    Page 18 of 27
**Motion No. 004**

18 of 27

context of the entire publication, are reasonably susceptible of a defamatory connotation, such that the issue is worthy of submission to a jury." *Id.*

The two defamation causes of action allege that the PN-Defendants (and others) made defamatory statements to the FBI and NBC News. Presumably, the nineteenth cause of action refers to the original reporting of Eggerud to the FBI and the twentieth refers to the statements made to NBC news. In paragraphs 38 and 40 of the second amended complaint, Plaintiffs allege that the PN-Defendants, acting in concert with Landlord, initially reported to the FBI that Ms. Kohler was potentially the victim of elder fraud. The PN-Defendants, in their papers, refer to this claim as "utter nonsense" and defendant Adinolfi has submitted a sworn affidavit that she had never heard of either plaintiff or the Landlord at the time that the initial report was made to the FBI. The PN-Defendants have also submitted a sworn affidavit from the building's attorney stating that defendant Adinolfi was brought into the matter after the initial report was made to the FBI and she did not know Ms. Kohler at that time. The Plaintiffs have nothing but conclusory allegations that the PN-Defendants were the ones to make the allegedly defamatory comments about Eggerud to the FBI. Without more, there is not a valid defamation claim against the PN-Defendants for statements made to the FBI, therefore dismissal of the nineteenth cause of action is proper.

As to the twentieth cause of action referring to the NBC Statement, here Plaintiffs have adequately pled a case for defamation by implication. This variation of defamation is "premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." *Stepanov*, at 35. The PN-Defendants argue that the Plaintiffs do not plead facts that show "that PN-Defendants intended to create or endorsed a negative

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No.  004**

Page 19 of 27

19 of 27

inference" about Eggerud in the NBC Statement and therefore the twentieth cause of action should be dismissed.

The parties dispute the accuracy of the language in the NBC Statement that refers to an "FBI investigation" (i.e., whether what the FBI was doing is correctly termed an investigation or a pre-assessment, whether the PN-Defendants had been authorized to state that Eggerud was a suspect, etc). But it is clear from the context of the NBC Statement, and the absence of any qualifiers regarding the lack of any evidence of financial fraud by the time the NBC Statement was made (as discussed above in the Anti-SLAPP section), that the implication and impression arising from the NBC Statement was meant to be that Eggerud was suspected by the FBI of committing financial crimes against the elderly. As regarding the NBC Statement, the Plaintiffs have adequately pled a claim and shown, under the Anti-SLAPP standard, a substantial basis for their claim. Therefore, it would be improper to dismiss the twentieth cause of action against the PN-Defendants.

### V.C: The Aiding and Abetting Causes of Action Fail to State a Claim

The fifth, seventh, and ninth causes of action allege that the PN-Defendants aided and abetted other defendants in the false imprisonment of Ms. Kohler in the rehabilitation home and the civil theft and conversion of her property by the court-appointed guardian. The PN-Defendants have moved to dismiss the fifth cause of action on the grounds of statute of limitations and failure to plead facts that allege they had a role in the discharge of Ms. Kohler from the rehabilitation home. The statute of limitations for a false imprisonment is one year. CPLR § 215(3). Ms. Kohler was discharged from the rehabilitation home on June 6, 2022. But because Ms. Kohler was confined to the rehabilitation home as part of the guardianship

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**                    **Page 20 of 27**
**Motion No.  004**

20 of 27

proceeding, there would have been no standing to bring a claim of false imprisonment until the Appeal Order vacating the Guardianship Proceeding. Therefore, the false imprisonment claims were timely brought.

Where the fifth cause of action fails is in the pleading of facts. The only fact that it pleads relating to the PN-Defendants' role in the decision to keep Ms. Kohler at the rehabilitation home is in paragraph 76 of the second amended complaint, stating that defendant Adinolfi represented to the guardianship court that Ms. Kohler was ready for discharge weeks before she ultimately was discharged. Therefore, dismissal of the fifth cause of action as against the PN-Defendants is proper.

As for the claim of aiding and abetting civil theft, in New York a claim for civil theft is more properly brought as a conversion claim. *Smith Barney, Harris Upham & Co. v. Luckie*, 245 A.D.2d 17, 19 (1st Dept. 1997). New York does recognize a claim for aiding and abetting conversion. *Dickinson v. Ignoi*, 76 A.D.3d 943, 945 (2nd Dept. 2010). The PN-Defendants move to dismiss the aiding and abetting conversion claim on the grounds that the guardian was operating pursuant to a court order and therefore had authority, defeating an essential element of a conversion claim. Furthermore, the second amended complaint, as PN-Defendants argue, does not state facts as to how the PN-Defendants acted to aid and abet conversion. Other than alleging that, but-for the actions of PN-Defendants in bringing the guardianship proceeding, the guardian would not have been able to allegedly convert property, the Plaintiffs do not allege facts going to any aiding and abetting by the PN-Defendants in this matter. Therefore, the seventh and ninth causes of actions are properly dismissed against the PN-Defendants.

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No. 004**

**Page 21 of 27**

21 of 27

*V.D: The PN-Defendants Have Failed to Meet Their Burden as to the Tortious Interference with Contract Claim*

The seventeenth cause of action alleges that the PN-Defendants committed tortious interference with contract when they refused to honor the POA without cause, and by filing a guardianship proceeding in order to avoid honoring it. The PN-Defendants have moved to dismiss this claim under CPLR § 3211(a)(7), arguing that because Eggerud did not execute an acknowledged affidavit stating that the POA was in full force, they cannot be liable for tortious interference with contract. While General Obligations Law § 5-1504 does allow for a party to request an acknowledged affidavit, there are disputed issues of fact about the Plaintiffs' willingness and ability to offer such an affidavit and if the PN-Defendants, as Plaintiffs put it "refused to even discuss the issue." But even more important, on this matter the PN-Defendants have failed to meet their burden on a motion to dismiss and shown that the pleadings fail to state a cause of action for tortious interference. Therefore, it would be premature to dismiss the seventeenth cause of action at this stage.

*V.E: The PN-Defendants Have Not Met Their Burden as to the General Obligations Law Article 5, Title 15 Claim*

The eighteenth cause of action alleges that the PN-Defendants violated Article 5, Title 15 of the New York General Obligations Law when they refused without cause to comply with the POA. The PN-Defendants have moved to dismiss this claim under CPLR § 3211(a)(7), arguing that Plaintiffs are required to bring this claim as a special proceeding. The relevant language of the GBL reads: "[i]f a special proceeding as authorized by section 5-1510 of this title is brought to compel the third party to honor the [POA][…] [s]uch special proceeding shall be the exclusive

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No. 004**

**Page 22 of 27**

22 of 27

remedy for a violation of this section." GBL § 5-1504(4)(b). Here, the Plaintiffs are not attempting to compel a party to accept the POA or to enforce one of the other actions listed in GBL § 5-1504, and therefore the limitation listed in GBL § 5-1504(4)(b) does not apply. At this stage, the PN-Defendants have not met their burden of showing that the Plaintiffs have failed to state a cause of action.

*V.F.: The IIED Cause of Action States a Claim but the NIED Cause of Action Fails to Allege Required Element of the Endangerment of Personal Safety*

The second and third causes of action make claims for intentional and negligent infliction of emotional distress, on behalf of Ms. Kohler. The PN-Defendants move to dismiss these claims partly on the grounds that they fail to state a cause of action. The tort of intentional infliction of emotional distress has four elements, of which the first one ("extreme and outrageous conduct") is the most difficult element to meet as a matter of law. *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). The vast majority of IIED claims before the Court of Appeals have failed because the conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*, at 122. The behavior by the PN-Defendants alleged here, viewed in the light most favorable to the Plaintiffs and taking facts alleged to be true, could meet this standard. Therefore, it would be improper to dismiss at this time.

The PN-Defendants move to dismiss the third cause of action, arguing that it fails to state a claim because it does not adequately allege either that the PN-Defendants owed Ms. Kohler a duty or that the Guardianship Proceeding threatened Ms. Kohler's safety. The elements of a cause of action for negligent infliction of emotional distress have been limited to (outside of

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**                    **Page 23 of 27**
**Motion No.  004**

23 of 27

special circumstances inapplicable here) that which "at least endangered the plaintiff's physical safety or cause the plaintiff to fear for his or her own physical safety." *Taggart v. Costabile*, 131 A.D.3d 243, 253 (2nd Dept. 2015). Here, there have not been facts alleged that would go to the PN-Defendants endangering Ms. Kohler's physical safety, therefore third cause of action is dismissed against the PN-Defendants.

### *V.G: The Judiciary Law Section 487 Cause of Action Fails to State a Claim*

The PN-Defendants have moved to dismiss the tenth cause of action on the grounds that it fails to state a valid Judiciary Law Section 487 claim. More specifically, the PN-Defendants argue that the claim is based on statements made during the Guardianship Proceeding, and that those statements are covered by the litigation privilege (as addressed above). They also argue that Plaintiffs have not pled facts that reach the requisite level of egregious misconduct required for the claim.

The Judiciary Law Section 487 allows an injured party to seek treble damages in a civil action against an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." The PN-Defendants do not cite to any case standing for the proposition that the litigation privilege shelters attorneys from liability under Section 487 for any statement made during the course of a proceeding.[2] Indeed, statements made "with intent to deceive the court" would in almost all cases need to be made during the course of a proceeding, so it would be difficult to extend the privilege (meant to protect from defamation claims) to Section 487 and still leave Section 487 as a viable cause of action. That

---

[2] More specifically, the PN-Defendants argue that "[t]he scope of the privilege has been found to cover a Section 487 claim" and cite to *Lewis v. Pierce Bainbridge Beck Price Hecht LLP*, 195 A.D.3d 518 as support for their argument. This case, however, clearly limits discussion of the litigation privilege to the "plaintiff's aiding and abetting defamation claim." *Lewis*, at 518.

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**          **Page 24 of 27**
**Motion No.  004**

24 of 27

facts pled in support of Plaintiffs' Section 487 claim involve statements made to the court during the course of the Guardianship Proceeding does not, on its face, defeat the claim.

A Section 487 claim must involve deceitful behavior that "reaches the level of egregious conduct or a chronic and extreme pattern of behavior" by the attorney at issue. *Savitt v. Greenberg Traurig, LLP*, 126 A.D.3d 506, 507 (1st Dept. 2015). To survive a motion to dismiss, the plaintiff need to make this showing with more than conclusory allegations. *Nehmadi v. Claude Castro & Assoc. PLLC*, 204 A.D.3d 544, 544 (1st Dept. 2022). Furthermore, "[a]llegations regarding an act of deceit or intent to deceive must be stated with particularity; the claim will be dismissed if the allegations as to scienter are conclusory and factually insufficient." *Facebook Inc., v. DLA Piper LLP (US)*, 134 A.D.3d 610, 615 (1st Dept. 2015). To plead a valid claim under Section 487, a plaintiff must therefore plead facts with particularity that, taken as true with every favorable inference, shows that the attorney at issue intended to deceive the court and that their deception either reached an egregious level or constituted a chronic and extreme pattern. The issue for this motion is whether the Plaintiffs have met this heavy pleading standard.

Plaintiffs' basis for the Section 487 claim is largely that the PN-Defendants "engaged in a broad overreaching scheme to improperly employ the guardianship process to oust the 94 year [] old Ms. Kohler from her rent-controlled apartment (on behalf of her landlord client) and to protect her law firm from a lawsuit, by engaging in repeated deceit" during the Guardianship Proceeding. While Plaintiffs' papers are filled with conclusory statements and overwrought language, there are also facts beyond mere conclusory allegations pled in support of this contention.

Plaintiffs allege that the PN-Defendants knew, before filing the Article 81 Petition, that the one incident of suspected financial impropriety by Eggerud (which had occurred several

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No.  004**

**Page 25 of 27**

25 of 27

[* 25]

years before) had been proven to have been authorized by Ms. Kohler, but that they still represented to the court in the Guardianship proceeding that the money was gone and that there were concerns about the legitimacy of the transfer. They allege that the PN-Defendants knew that there was no official FBI investigation into Eggerud but represented that there was to the Guardianship court. They allege that the PN-Defendants represented that a guardianship was needed in part because "we have reports that the apartment is in horrible condition" when, as the First Department pointed out in their Appeal Order, it was the building staff that were uncooperative with the repair requests. The issue is that while the Plaintiffs have alleged facts that go to their Section 487 claim, what they allege has not met the requisite level of egregious or extreme conduct, at least so far as deceit upon the guardianship court is concerned. Therefore, the tenth cause of action is properly dismissed.

**VII: Conclusion**

Overall, the PN-Defendants motion to dismiss has succeeded in part and failed in part. Specifically, the third, fifth, seventh, ninth, fifteenth, sixteenth, and nineteenth causes of action fail to allege facts going to a required element and the tenth fails to meet the heavy pleading standard required for deceit upon the court. But the PN-Defendants have not met their burden on a motion to dismiss as to the other causes of action. The Court has considered the PN-Defendants' other arguments and found them unavailing. Accordingly, it is hereby

ORDERED and ADJUDGED that the motion to dismiss is granted in part and the third, fifth, seventh, ninth, tenth, fifteenth, sixteenth, and nineteenth causes of action are dismissed as to defendants Elizabeth Adinolfi and Phillips Nizer, LLP; and it is further

ADJUDGED that the defendants' motion to dismiss the rest of the complaint is denied; and it is further

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No. 004**

**Page 26 of 27**

26 of 27

ORDERED that defendant is directed to serve an answer to the complaint within 20 days after service of a copy of this order with notice of entry.

20241126135652LFRANKB1ED9?9C50554EBC9163F54D9B204084

| 11/26/2024 | | LYLE E. FRANK, J.S.C. |
|---|---|---|
| **DATE** | | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☐ GRANTED  ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**654985/2023   EGGERUD, KJERSTI INGA vs. WEST END 84 UNITS LLC ET AL**
**Motion No.  004**

Page 27 of 27

27 of 27